UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LONNIE WASHINGTON,<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br><br>Respondent. | CAUSE NO. 3:23-CV-243-JD-JPK |

OPINION AND ORDER

Lonnie Washington, a prisoner without a lawyer, filed a habeas corpus petition under 28 U.S.C. § 2254 challenging his 2006 conviction in Marion County under Case No. 49G05-0508-MR-140718. (ECF 1.) Pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the court must review the petition and dismiss it "[i]f it plainly appears . . . that the petitioner is not entitled to relief[.]"

In 2006, Mr. Washington was convicted of robbery, confinement, and felony murder for his part in the shooting death of Lewis Beverly. *Washington v. State*, 858 N.E.2d 1073 (Table), 2006 WL 3734592, at *1-2 (Ind. Ct. App. Dec. 20, 2006). The Indiana Court of Appeals summarized the facts underlying his conviction as follows:

> In the late morning of July 4, 2005, Lewis Beverly and his friend, Jennifer Miller, were at Beverly's house when Edward Mobley stopped by looking for Beverly's roommate. Beverly's roommate was away, and Mobley talked to Miller and Beverly for about a half an hour. During that time, Mobley observed Beverly count $200 to $300. Mobley also agreed to come back around 4:00 that afternoon expecting that Beverly's roommate would be home then. After Mobley left, Miller and Beverly walked down the street to another house, where Miller visited with Demetrius Jenkins. Washington, Matthew Pittman, and Mohammed Steele were also at that

house. While they were all there, Miller arranged for someone else to take her to pick up food. Beverly gave Miller $15 to get the food. At that time, Miller observed that he had less than $500 in his pocket. Miller left, and Beverly walked back to his house.

Shortly thereafter, Pittman asked Jenkins to get some tape from the house. Jenkins went inside and returned with gray tape, which he gave to Pittman. Washington, Pittman, and Steele left in the same direction as Beverly.

In the meantime, Mobley returned to Beverly's house around 3:00. He talked to Beverly for approximately a half an hour and then walked out to his truck to get a pen. As he returned to Beverly's house he noticed three men, one of whom was Washington, standing at the side entrance of Beverly's house. Mobley went in using the front door, and the three men came in the side door. Beverly sat on a couch, Mobley sat on a speaker box, Washington sat in a chair, and the other two men stood behind Beverly in the kitchen. Suddenly, one of the men standing behind Beverly jumped and kicked Beverly in the face, and the same man pulled out a black semiautomatic handgun. Beverly fell to the floor. Washington remained seated in the chair. Mobley ran out of the house, and the second man ran after him. Mobley got in his truck and left to call 911.

When Miller returned to the house down the street from Beverly's with the food, Jenkins told her not to go to Beverly's house. She remained on the porch with Jenkins and saw Mobley run to his truck and leave. At that point, Miller called Beverly's house and heard Beverly "hollering." Miller also heard Beverly say, "I swear to God that's all I got" before she was disconnected. Miller tried to call again but could not get through. Jenkins suggested that Miller call the police. Miller decided to go to Beverly's house. When she arrived, Beverly told her to come in. He was lying on the floor and was "bloody from head to toe, his eye was hanging out, his lips [were] swollen and he had duct tape on his arms and legs...." Beverly told Miller he was dying. Miller called Beverly's mother and 911. Five days later, Beverly died of a gunshot wound to the head that he sustained during the incident.

*Id.* (internal citations omitted). Following a jury trial, Mr. Washington was found guilty.

*Id.* He was sentenced to an aggregate term of 60 years in prison. *Id.* at *2.

He appealed, arguing as follows: (1) the evidence was not sufficient to support his conviction; (2) the trial court erred in not granting him a mistrial after a police officer testified that a gun belonging to him was recovered that did not match the murder weapon; and (3) his conviction for felony murder and robbery violated double jeopardy principles. *Id.* at *1. The Indiana Court of Appeals found the evidence sufficient to support his conviction and also concluded that the trial court had not erred in denying his request for a mistrial. *Id.* at *2-4. The court agreed, however, that double jeopardy principles prevented him from being convicted of both robbery and felony murder when robbery was the underlying crime supporting the felony murder charge. *Id.* at *5. The court therefore remanded with instructions for the trial court to vacate the robbery conviction, but affirmed in all other respects.[1] *Id.* He sought transfer to the Indiana Supreme Court, but the court denied his petition on February 22, 2007. *Id.* He did not seek review in the U.S. Supreme Court. (ECF 1 at 1.)

In July 2012, he filed a post-conviction petition in state court, which he subsequently withdrew and refiled in August 2013. *State v. Washington*, 49G05-0508-PC-140718 (Marion Sup. Ct. closed Nov. 12, 2015). The court denied post-conviction relief in April 2015. *Id.* (order dated Apr. 22, 2015). In 2017, Mr. Washington sought leave to file

---

[1] On January 4, 2007, the trial court vacated the robbery conviction as instructed. *Washington*, 49G05-0508-MR-140718 (docket entry Jan. 4, 2007).

a belated appeal of the court's ruling, but his request was denied.[2] *Id.* (order dated Feb. 23, 2017).

On March 27, 2023, he filed his federal petition asserting three claims of ineffective assistance of appellate counsel. (ECF 1.) He claims as follows: (1) counsel was ineffective in failing to argue that the trial judge erred in admitting the statement by the victim "I swear to God that's all I got" under the excited utterance exception to the hearsay rule; (2) counsel was ineffective in failing to argue that his conviction for confinement and felony murder violated double jeopardy principles; and (3) counsel was ineffective in failing to assert a claim of ineffective assistance of trial counsel, based on the fact that trial counsel did not object to the state's untimely amendment to the indictment. (*Id.* at 5-6.)

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") contains a strict statute of limitations, set forth as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[2] Mr. Washington asserts in his petition that he did pursue an appeal in the post-conviction proceedings, but the docket number he provides pertains to a petition for leave to file a successive post-conviction petition he filed in 2020. *See Washington v. State*, 20A-SP-01720 (Ind. Ct. App. closed Apr. 29, 2021). As outlined above, the docket in the post-conviction case reflects that he did not pursue a timely appeal and was denied leave to pursue a belated appeal in 2017. *See Washington*, 49G05-0508-PC-140718.

>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

Mr. Washington does not assert, nor does the court find any basis to conclude, that his claims are based on newly discovered facts or a new U.S. Supreme Court case made retroactive to cases on collateral review. Rather, he asserts straightforward claims of ineffective assistance of counsel, and the factual and legal basis for these claims would have been available to him since the time of the direct appeal proceedings. Nor does he assert that a state-created impediment prevented him from filing his federal petition on time.

Thus, 28 U.S.C. § 2244(d)(1)(A) applies. On direct appeal, the Indiana Supreme Court denied transfer in February 2007, and he did not seek review in the U.S. Supreme Court. (ECF 1 at 1.) His conviction became final for purposes of AEDPA when the time for seeking review in the U.S. Supreme Court expired in May 2007. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (for habeas petitioners who do not complete all levels of state review, the judgment becomes final when the time for filing an appeal expires); *see also* U.S. SUP. CT. R. 13(1) (petition for writ of certiorari must be filed within 90 days of state court's judgment). The clock thus began running in May 2007, giving him one year

from that date to file a timely federal petition. He did not file his federal petition by that deadline.

Although he filed a state post-conviction petition in July 2012, the federal deadline had already expired by that time. The state court's decision denying post-conviction relief in April 2015 did not restart the clock or open a new "window" for federal habeas review. *De Jesus v. Acevedo*, 567 F.3d 941, 942-43 (7th Cir. 2009). Additionally, he let another eight years pass after the state court's ruling before he filed his federal petition. Although in the interim he sought leave to pursue a successive post-conviction petition, his filings did not toll the federal deadline under 28 U.S.C. § 2244(d)(2). *See Martinez v. Jones*, 556 F.3d 637, 638 (7th Cir. 2009) (prisoner's request to file a successive post-conviction was not a "properly filed post-conviction action" that would toll the deadline under 28 U.S.C. § 2244(d)(2)). Indeed, because the federal deadline had expired by the time he filed these requests, they are "irrelevant" for statute of limitation purposes. *De Jesus*, 567 F.3d at 942-43. The petition was thus filed well beyond the one-year deadline.

When asked to explain why his petition should be deemed timely, Mr. Washington states simply "actual innocence." (ECF 1 at 6.) He appears to concede that his petition is untimely and to invoke the actual innocence exception. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" to obtain review of his claims even though they are procedurally defaulted or untimely. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this context, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614,

6

623 (1998) (internal quotation marks omitted). To raise a credible claim of actual innocence, the petitioner must have "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence[.]" *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (a petitioner claiming actual innocence "must have documentary, biological (DNA) or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim"). The petitioner must demonstrate that in light of this new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. This standard is demanding and can be met only in "extraordinary" circumstances. *House v. Bell*, 547 U.S. 518, 538 (2006).

Other than broadly invoking the exception, Mr. Washington does not point to any new evidence—much less powerful or reliable evidence—to demonstrate that he is factually innocent of felony murder. Under Indiana law, a person who kills another human being while committing or attempting robbery commits murder. IND. CODE § 35-42-1-1(2). Additionally, "a person who knowingly or intentionally aids, induces, or causes another person to commit an offense commit that offense[.]" IND. CODE § 35-41-2-4. Although mere presence at the scene is insufficient to establish that the defendant aided another in the commission of an offense, the court will consider the defendant's "companionship with another engaged in criminal activity," whether the defendant "fail[ed] to oppose the crime," and his or her conduct "before, during, and after the occurrence of the crime." *Garland v. State*, 788 N.E.2d 425, 431 (Ind. 2003). The evidence

7

adduced at trial showed that Mr. Washington, along with his two co-defendants, were seen in a home with the victim, who had several hundred dollars in his possession. Rather than opposing the offense, Mr. Washington was observed sitting by and doing nothing as his co-defendants kicked and chased the victim with a gun. Additionally, Mr. Washington's fingerprints were the only prints found on the duct tape binding the victim's arms and legs. *Washington*, 2006 WL 3734592, at *4.

Mr. Washington has offered no new evidence to undercut the evidence of his guilt. Instead, his petition describes procedural errors by counsel and an alleged double jeopardy violation, which do not undermine the factual underpinnings for his conviction. He has not made a credible showing of actual innocence.

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must consider whether to grant or deny a certificate of appealability. As stated, Mr. Washington's petition is untimely by several years and he does not make a credible claim of actual innocence. The court finds no basis to conclude that reasonable jurists would debate the correctness of this ruling or find a reason to encourage him to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, he will not be granted a certificate of appealability.

For these reasons, the court DISMISSES the petition (ECF 1) pursuant to Rule 4 of the Rules Governing Section 2254 Cases, DENIES the petitioner a certificate of appealability, and DIRECTS the clerk to close this case.

SO ORDERED on June 12, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT